﻿Citation Nr: 18124184
Decision Date: 08/06/18 Archive Date: 08/06/18

DOCKET NO. 15-20 120
DATE: August 6, 2018
ORDER
The request to reopen the previously denied claim of entitlement to service connection for a skeletal condition is denied.
The request to reopen the previously denied claim of entitlement to service connection for a bilateral leg disability is denied.
The request to reopen a claim of entitlement to service connection for an acquired psychiatric disorder, to include depression is granted. 
The request to reopen the previously denied claim of entitlement to service connection for a lumbar spine disability is denied.
Entitlement to service connection for tinnitus is denied.
Entitlement to service connection for obstructive sleep apnea is denied.
REMANDED
Entitlement to an increased rating for a left shoulder disability, currently rated as 20 percent disabling is remanded. 
Entitlement to service connection for a right shoulder disability is remanded.
Entitlement to service connection for a neck disability is remanded.
Entitlement to service connection for a disability of the hands and arms is remanded.
The underlying claim of entitlement to service connection for an acquired psychiatric disorder, to include depression is remanded.
Entitlement to service connection for headaches is remanded.
Entitlement to a total disability rating for individual unemployability due to service-connected disability (TDIU) is remanded.
FINDINGS OF FACT
1. An unappealed April 2000 rating decision denied the Veteran’s claim of entitlement to service connection for a skeletal condition; evidence obtained since that time does not raise a reasonable possibility of substantiating the claim.
2. An unappealed October 1996 rating decision denied service connection for a bilateral leg disability, and an unappealed September 2008 rating decision declined to reopen the Veteran’s claim of entitlement to service connection for a bilateral leg disability; evidence obtained since that time does not raise a reasonable possibility of substantiating the claim.
3. An unappealed April 2000 rating decision denied the Veteran’s claim of entitlement to service connection for depression; evidence obtained since that time raises a reasonable possibility of substantiating the claim. 
4. An unappealed October 1996 rating decision denied service connection for a lumbar spine disability, and unappealed rating decisions in April 2000 and August 2003 declined to reopen the Veteran’s claim of entitlement to service connection for a lumbar spine disability; evidence obtained since that time does not raise a reasonable possibility of substantiating the claim.
5. The Veteran’s tinnitus did not originate in service or within a year of service, and is not otherwise etiologically related to the Veteran’s active service. 
6. The Veteran’s claimed obstructive sleep apnea is not attributable to his active duty service. 
CONCLUSIONS OF LAW
1. New and material evidence has not been received since the April 2000 denial of service connection for a skeletal condition, and that claim is not reopened. 38 U.S.C. § 5108 (2012); 38 C.F.R. § 3.156 (2018).
2. New and material evidence has not been received since the September 2008 denial of service connection for a bilateral leg disability, and that claim is not reopened. 38 U.S.C. § 5108 (2012); 38 C.F.R. § 3.156 (2018).
3. New and material evidence has been received since the April 2000 denial of service connection for depression, and that claim is reopened. 38 U.S.C. § 5108 (2012); 38 C.F.R. § 3.156 (2018).
4. New and material evidence has not been received since the August 2003 denial of service connection for a lumbar spine disability, and that claim is not reopened. 38 U.S.C. § 5108 (2012); 38 C.F.R. § 3.156 (2018).
5. The criteria for service connection for tinnitus have not been met. 38 U.S.C. §§ 1101, 1131, 1133, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2018).
6. The criteria for service connection for obstructive sleep apnea have not been met. 38 U.S.C. §§ 1101, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2018).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served on active duty from October 1976 to October 1980.
This matter comes before the Board of Veterans’ Appeals (Board) on appeal from rating decisions by a Department of Veterans Affairs (VA) Regional Office (RO).
Additional VA outpatient treatment reports were associated with the claims file after the May 2015 statement of the case (SOC) was issued. However, the records are either duplicative of or cumulative of other treatment records considered by the Agency of Original Jurisdiction (AOJ). As such, they are not pertinent, and the Veteran is not prejudiced by the Board’s adjudication of the issues decided herein. 
The Veteran’s representative also submitted private medical evidence with a waiver of consideration by the AOJ. 
During the pendency of the appeal, the Veteran and his representative raised a claim for TDIU in connection with the claims on appeal. As the issue of an increased rating for a left shoulder disability is before the Board at this time, the issue of entitlement to a TDIU is before the Board. See Rice v. Shinseki, 22 Vet. App. 447 (2009).
New and Material Evidence Claims 
A previously denied claim may be reopened by the submission of new and material evidence. 38 U.S.C. § 5108; 38 C.F.R. 3.156. Evidence is new if it has not been previously submitted to agency decision makers. 38 U.S.C. § 5108; 38 C.F.R. § 3.156(a). Evidence is material if it, either by itself or considered in conjunction with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. Id. New and material evidence cannot be cumulative or redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. Id. 
The Court interprets the language of 38 C.F.R. § 3.156(a) as creating a low threshold, and views the phrase “raises a reasonable possibility of substantiating the claim” as “enabling rather than precluding reopening.” See Shade v. Shinseki, 24 Vet. App. 110 (2010).
Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1131; 38 C.F.R. §§ 3.303, 3.304.
Establishing service connection requires evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). 
Service connection may also be granted for certain chronic diseases, including arthritis, when such disability is manifested to a degree of 10 percent or more within one year of discharge from service. See 38 U.S.C. § 1101, 1133; 38 C.F.R. §§ 3.307, 3.309. 
When chronic diseases are at issue, the second and third elements for service connection may alternatively be established.
Skeletal Condition
Historically, the Veteran submitted his original claim for a generalized skeletal condition in August 1999. 
Of note, the Veteran’s current claim arises from an October 2013 statement in which the Veteran claimed entitlement to compensation for various disabilities including depression, tinnitus, obstructive sleep apnea, shoulders, arms, hands, leg, neck, and headaches. The RO accepted this statement as a claim for a “skeletal condition.” However, as the Veteran submitted claims for specific disabilities, the Board finds it more appropriate to consider these issues as separate and distinct disabilities rather than a generalized skeletal condition. Moreover, since the initial claim was filed in August 1999, the Veteran has submitted claims for several of the disabilities currently appealed, and the RO treated those disabilities as separate and distinct claims. For purposes of clarity, the Board will adjudicate the claim for a skeletal condition as a claim for a generalized skeletal condition and the Board will address the separate disabilities claimed as separate and distinct issues. 
In an October 2014 rating decision, the Veteran’s application to reopen a claim for entitlement to service connection for a skeletal condition was denied. The Veteran was notified of the decision in October 2014 and appealed the denial of his claim. 
An unappealed April 2000 rating decision originally denied the Veteran’s claim for service connection for a skeletal condition. That decision is final. 38 C.F.R. § 20.1103. 
The RO denied the claim on the basis that evidence did not show that the Veteran claimed a specific skeletal condition and indicated that the evidence must demonstrate a disabling condition. The evidence of record at that time consisted of service treatment reports, VA examination reports, and lay statements. 
The service treatment reports did not show any complaints, findings, or a diagnosis of a generalized “skeletal condition”. 
The lay statements from the Veteran concern reports of pain in the arms, legs, and back as well as headaches. 
Lay statements from various other individuals indicate that the Veteran had pain in his arms, legs, shoulders, and back. 
At an October 1999 VA examination, the Veteran was assessed with a benign heart murmur, post fracture of the left clavicle, right carpal tunnel syndrome, chronic low back strain, and arthritis of the ankles. 
Since the claim was denied in 2000, VA and private treatment reports, VA examination reports, records from the Social Security Administration (SSA), and lay statements were associated with the claims file. 
While the newly received records reflect various disabilities including cervical spondylosis, stenosis, and degenerative changes, lumbar strain and degenerative changes, carpal tunnel syndrome, arthritis, right knee edema, and left elbow degenerative changes, none of the evidence establishes the presence of a generalized skeletal condition. As noted, when the Veteran submitted his current claim he did not claim entitlement to a generalized skeletal condition. Consequently, as was the case at the time of the final prior denial in April 2000, the lay and medical evidence does not establish a generalized skeletal condition or a link to service. 
The Board acknowledges that the threshold for reopening is low, but it is a threshold nonetheless, and here, the evidence obtained since the Veteran’s claim was previously denied simply does not approach that threshold. As such, the claim is not reopened, and this portion of the appeal is denied.
The Board notes that the RO adjudicated the current claim for a skeletal condition as including several of the claimed orthopedic conditions (specifically the arms, hands, and neck). The RO also considered those claims as separate and distinct issues. As noted above, the claim was initially denied in 2000 as a general skeletal condition which did not specify a specific skeletal condition. Here, the Veteran submitted a claim for specific disabilities and the Board will adjudicate the specified separate and distinct disabilities separately in this decision. 
Bilateral Leg Disability
In an October 2014 rating decision, the Veteran’s application to reopen a claim for entitlement to service connection for a bilateral leg disability was not reopened. The Veteran was notified of the decision in October 2014 and he appealed the denial of his claim. 
An October 1996 rating decision originally denied the Veteran’s claim for service connection for a disability of the legs. The Veteran did not appeal the decision. The Veteran submitted an application to reopen a claim for a bilateral leg disability in April 2008 and the RO declined to reopen the claim in a September 2008 rating decision. The Veteran did not appeal the decision. The September 2008 rating decision represents the last final denial of the claim. 38 C.F.R. § 20.1103. 
In the September 2008 rating decision, the RO declined to reopen the Veteran’s claim for service connection for a disability of the legs. The RO concluded that the evidence did not show that the Veteran had a chronic bilateral leg disability related to his military service. 
The evidence of record at that time consisted of service treatment reports, records from the SSA, VA examination reports, VA treatment reports, and lay statements.
The service treatment reports reflect that the Veteran sustained contusions after a hit and run accident. The records do not specify the location on the Veteran’s body where he sustained the contusions but merely note “multiple contusions.” He was noted to have been a pedestrian struck by an automobile. The records do not reflect any specific injury to the legs. The Veteran’s August 1980 separation examination reveals a normal clinical evaluation of the lower extremities. 
An October 1996 VA examination reveals that the Veteran was assessed with bilateral lower extremity strain. The Veteran reported that he sustained a fracture to both legs in a motor vehicle accident in service 
Lay statements from various individuals received in November 1997 indicate that the Veteran often complained about his legs and was involved in an accident in service and a car accident after service. 
The records from the SSA include a September 2005 examination from W. Mayers, M.D., which indicates that the Veteran was assessed with a history of leg pain, etiology undetermined. 
At an August 2008 VA examination, examination of the knees was normal. 
Since the September 2008 denial of the claim, additional VA and private treatment records and lay statements were associated with the claims file.
In November 2008, the Veteran submitted a lay statement and indicated that he believes that being run over in service caused his leg disabilities. 
An electromyography performed by M. Cunningham, M.D., in June 2012, reflects that the Veteran was seen for numbness and weakness in the left leg. Minimal abnormal irritability in the L4-5 paraspinal muscles was appreciated but there was no other electrodiagnostic evidence of lumbosacral radiculopathy, plexopathy, myopathy, or peripheral neuropathy. 
VA outpatient treatment reports reflect reports of leg numbness and leg pain at VA from 2009 to 2012. 
Private treatment reports from Williams Medical Clinic reflect reports of left leg numbness in 2012. 
None of the leg complaints associated with the private and VA treatment reports include any opinion linking the bilateral leg complaints to the Veteran’s active duty service. The Board acknowledges the Veteran’s statement linking his current leg complaints to his accident in service. However, the Veteran previously submitted evidence that he was involved in an accident in service and had leg complaints. Accordingly, his statements alone are not sufficient to reopen the claim for entitlement to service connection for a bilateral leg disability.
Consequently, as was the case at the time of the final prior denial in September 2008, the evidence still fails to establish that a diagnosed disability of the bilateral legs is related to the Veteran’s active duty service.
The Board acknowledges that the threshold for reopening is low, but it is a threshold nonetheless, and here, the evidence obtained since the Veteran’s claim was previously denied simply does not approach that threshold. As such, the claim is not reopened, and this portion of the appeal is denied.
Acquired Psychiatric Disorder
In an October 2014 rating decision, the Veteran’s application to reopen a claim for entitlement to service connection for an acquired psychiatric disorder was not reopened. The Veteran was notified of the decision in October 2014 and he appealed the denial of his claim.
An unappealed April 2000 rating decision originally denied the Veteran’s claim for service connection for depression. That decision is final. 38 C.F.R. § 20.1103. 
In the April 2000 rating decision, the RO concluded that the evidence did not show that the Veteran’s depression was related to his military service. Since the claim was denied, evidence in the form of VA and private treatment reports, VA examinations reports, and lay statements were submitted.
The private treatment reports include an opinion from H. Henderson-Galligan, Ph.D., HSPP, dated in July 2015. Dr. Henderson-Galligan indicated that the Veteran’s service-connected left shoulder as well as nonservice-connected disabilities cause his depression. 
The Board concludes that the newly submitted evidence is material. As such, the claim is reopened. The underlying claim of service connection for depression will be addressed in the remand section below. 
Lumbar Spine
In a July 2013 rating decision, the Veteran’s claim for entitlement to service connection for a lumbar spine disability was denied. The Veteran was notified of the decision in July 2013 and he appealed the denial of his claim. 
An October 1996 rating decision originally denied the Veteran’s claim for service connection for a back disability. The Veteran did not appeal the decision. The Veteran submitted an application to reopen a claim for a back disability in August 1999 and the RO declined to reopen the claim in an April 2000 rating decision. The Veteran did not appeal the decision. In June 2003, the Veteran submitted an application to reopen a claim for a back disability and the RO declined to reopen the claim in an August 2003 rating decision. The Veteran did not appeal the decision. The August 2003 rating decision represents the last final denial of the claim. 38 C.F.R. § 20.1103. 
In the August 2003 rating decision, the RO concluded that the evidence did not show that the Veteran had a chronic low back disability related to his military service. 
The evidence of record at that time consisted of service treatment reports, VA examination reports, VA treatment reports, private treatment reports, and lay statements.
The service treatment reports reflect that the Veteran sustained contusions after a hit and run accident. The records do not state where on the Veteran’s body the contusions were sustained but merely note “multiple contusion.” He was noted to have been a pedestrian struck by an automobile. The records do not reflect any specific injury to the lumbar spine. The Veteran’s August 1980 separation examination reveals a normal clinical evaluation of the spine. 
A June 1995 VA medical certificate denotes a diagnosis of lumbosacral strain. 
An October 1996 VA examination reveals that the Veteran was assessed with back strain, status post motor vehicle accident by history. 
Lay statements from various individuals dated in 1997 indicate that the Veteran had back pain and was involved in an accident in service and a car accident after service. 
At an October 1999 VA examination, the Veteran was assessed with chronic low back strain.
Since the August 2003 denial, additional VA and private treatment reports were received and records from the SSA were associated with the claims file. 
The records from the SSA include a June 2007 examination from A. Greenberg, M.D., which indicates that the Veteran was assessed with degenerative changes in the spine. 
At an August 2008 VA examination, the Veteran was assessed with lumbosacral strain. 
VA outpatient treatment reports reflect a diagnosis of minor degenerative traction spurs at the L4 vertebral body per x-ray in August 2008. 
In November 2008, the Veteran submitted a lay statement and indicated that he believes that being run over in service caused his back disability. 
A June 2012 magnetic resonance imaging (MRI) of the spine conducted at Baptist Memorial Hospital reveals a diagnosis of L3-4 disc herniation with near complete obstruction. 
The Veteran submitted a statement in June 2015 and again indicated that his back was injured in service when he was struck by a car. 
None of the lumbar spine diagnoses associated with the private treatment reports, VA treatment reports, and SSA reports include any opinion linking the Veteran’s claimed lumbar spine disability to his active duty service. 
Consequently, as was the case at the time of the final prior denial in August 2003, the evidence still fails to establish that a disability of the lumbar spine is related to the Veteran’s active duty service. The Board acknowledges the Veteran’s lay statements attempting to link his claimed lumbar spine disability to his motor vehicle accident in service. However, the Veteran previously submitted lay evidence that he had back problems and was injured in a motor vehicle accident in service. Accordingly, his statements alone are not sufficient to reopen the claim for entitlement to service connection for a lumbar spine disability.
The Board acknowledges that the threshold for reopening is low, but it is a threshold nonetheless, and here, the evidence obtained since the Veteran’s claim was previously denied simply does not approach that threshold. As such, the claim is not reopened, and this portion of the appeal is denied.
Service Connection
Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1131; 38 C.F.R. §§ 3.303, 3.304.
Establishing service connection requires evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). 
Service connection may also be granted for certain chronic diseases, including tinnitus, when such disability is manifested to a degree of 10 percent or more within one year of discharge from service. See 38 U.S.C. § 1101, 1133; 38 C.F.R. §§ 3.307, 3.309. 
When chronic diseases are at issue, the second and third elements for service connection may alternatively be established.
Tinnitus
The Veteran submitted a claim of entitlement to service connection for tinnitus in October 2013. The claim was denied in an October 2014 rating decision from which the Veteran appealed. 
A review of the Veteran’s DD Form 214 reflects that his military occupation specialty (MOS) was a quartermaster and chemical equipment repairer. 
A review of the Veteran’s service treatment reports does not reflect any complaints, findings, or treatment for tinnitus. 
Post-service VA and private treatment reports are negative for any reference to treatment for or complaints of tinnitus. 
The Veteran was afforded a VA audiological examination in May 2014. The Veteran reported a history of military noise exposure to trucks and guns and post-service noise exposure in a factory. He reported intermittent, longstanding bilateral tinnitus. The Veteran was unaware of the date and circumstances of the onset of tinnitus. The examiner indicated that the Veteran has a diagnosis of hearing loss and that tinnitus is known to be a symptom associated with hearing loss. The examiner noted that the Veteran’s MOS had a moderate probability of exposure to loud noises. 
In considering the evidence of record and the applicable laws and regulations, the Board concludes that the Veteran is not entitled to service connection for tinnitus. 
As an initial matter, the Board notes that the Veteran was likely exposed to some level of noise exposure from his MOS as a quartermaster and chemical equipment repairer. 
However, the Board has determined that the 38 C.F.R. § 3.303(b) presumptions have not been met. This is so because there were no complaints or findings of tinnitus in service, and following service, the first evidence of a report of tinnitus came in October 2013 (more than twenty years after the Veteran separated from service). The first medical evidence of tinnitus did not appear until May 2014, when the Veteran was evaluated at the VA audiological examination. 
As such, there is no medical evidence showing that tinnitus was diagnosed either during service or within a year of service. Likewise, tinnitus has not been continuous since service, as there is no medical evidence following service which reflects treatment for tinnitus. 
While the Veteran is competent to report that he has tinnitus, Charles v. Principi, 16 Vet. App. 370 (2002), there is no indication that the Veteran reported tinnitus until he submitted his claim in 2013. He has acknowledged uncertainty as to when his tinnitus began. 
Therefore, the 38 C.F.R. § 3.303(b) presumptions have not been met. Nevertheless, service connection may be granted if the evidence establishes a nexus between tinnitus and the Veteran’s service including military noise exposure. As noted, military noise exposure has been conceded in this case. 
Here, the Board finds that the competent evidence of record does not reveal a showing of a relationship between the Veteran’s tinnitus and his period of service. The principal evidence weighing against the Veteran’s claim is the opinion of the VA examiner. As recounted above, the Board obtained a VA examination and opinion to investigate the etiology of the Veteran’s tinnitus. Unfortunately, while the VA examiner confirmed that the Veteran did have tinnitus, the examiner concluded that tinnitus is a symptom of the Veteran’s diagnosed hearing loss and service connection for hearing loss has not been established in this case. In providing the medical opinion, the examiner was fully apprised of the Veteran’s military and post-military noise exposure. 
The Board acknowledges that lay testimony is competent to establish the presence of observable symptomatology and may provide sufficient support for a claim of service connection. Layno v. Brown, 6 Vet. App. 465 (1994). For example, when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination “medical in nature” and is capable of lay observation. As such, the Veteran is considered competent to describe ringing in his ears. Yet, aside from statements that he was exposed to military noise during service, the Veteran has not provided any extensive descriptions of ringing in his ears during service and, in fact, was uncertain of the circumstances and date of onset of the claimed tinnitus.
As noted above, the VA examiner’s opinion is the most probative evidence of record as to the etiology of the Veteran’s tinnitus. Based on this conclusion, the preponderance of the evidence is against a finding that the Veteran’s tinnitus either began during or was otherwise caused by his military service including noise exposure therein. Therefore, the criteria for service connection have not been met, and the Veteran’s claim is denied.
Obstructive Sleep Apnea
The Veteran submitted a claim of entitlement to service connection for obstructive sleep apnea in October 2013. The claim was denied in an October 2014 rating decision from which the Veteran appealed. 
A review of the Veteran’s service treatment reports does not reflect any complaints, findings, or treatment for obstructive sleep apnea. 
Post-service VA and private treatment reports do not reflect a diagnosis of obstructive sleep apnea at any time since service. 
The Veteran has not submitted any lay evidence regarding any current symptoms of obstructive sleep apnea or any description of any symptoms of sleep apnea in service.
In considering the evidence of record and the applicable laws and regulations, the Board concludes that the Veteran is not entitled to service connection for obstructive sleep apnea. 
The evidence of record does not include a diagnosis of obstructive sleep apnea during service or at any time since service. In all claims for service connection, the threshold requirement is evidence of a currently diagnosed disability. Boyer v. West, 210 F.3d 1351 (Fed. Cir. 2000); Brammer v. Derwinski, 3 Vet. App. 223 (1992). The competent evidence of record does not establish any symptoms of or a currently diagnosed obstructive sleep apnea. Consequently, the objective findings do not support the finding of a diagnosis of obstructive sleep apnea. The best evidence at this time simply fails to establish the current presence of obstructive sleep apnea. Consequently, entitlement to service connection for obstructive sleep apnea is denied.
Duty to Assist
There is no indication in this record of a failure to notify. See Scott v. McDonald, 789 F.3rd 1375 (Fed. Cir. 2015). Pursuant to the duty to assist, an examination in this case has been undertaken and a medical opinion was obtained with regard to the claim for tinnitus. Regarding records, VA must obtain “records of relevant medical treatment or examination” at VA facilities. 38 U.S.C. § 5103A(c)(2). All records pertaining to the condition at issue are presumptively relevant. See Moore v. Shinseki, 555 F.3d 1369, 1374 (Fed. Cir. 2009); Golz v. Shinseki, 590 F.3d 1317 (Fed. Cir. 2010). In addition, where the Veteran “sufficiently identifies” other VA medical records that he or she desires to be obtained, VA must also seek those records even if they do not appear potentially relevant based upon the available information. Sullivan v. McDonald, 815 F.3d 786, 793 (Fed. Cir. 2016) (citing 38 C.F.R. § 3.159(c)(3)). In this case, the Veteran has indicated no such records exist and all pertinent records have been obtained.
With regard to the obstructive sleep apnea claim decided herein, while a VA medical opinion was not provided, the Federal Circuit Court of Appeals (Federal Circuit) has recognized that there is not a duty to provide an examination in every case. See Waters v. Shinseki, 601 F.3d 1274 (Fed. Cir. 2010). Rather, the Secretary’s obligation under 38 U.S.C. § 5103A(d) to provide the Veteran with a medical examination or to obtain a medical opinion is not triggered unless there is an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the Veteran’s service or with another service-connected disability. See McLendon v. Nicholson, 20 Vet. App.79, 81 (2006). In this case, there is no evidence of a diagnosis of obstructive sleep apnea nor any reports of symptoms of sleep apnea in service or since that time. As such, VA’s duty to provide an examination with an opinion is not triggered with regard to this matter. See Waters, 601 F.3d 1274.
With regard to the new and material evidence claims for a skeletal condition, a bilateral leg disability, and a lumbar spine disability, the Board acknowledges that VA examinations and opinions were not obtained. However, a VA medical examination or opinion is not required unless new and material evidence is presented. 38 C.F.R. § 3.159(c)(4)(iii); see also Paralyzed Veterans of America v. Secretary of Veterans Affairs, 345 F.3d 1334 (Fed. Cir. 2003) (“without the introduction of new and material evidence, VA is not required to provide a medical examination or opinion”). As was discussed above, new and material evidence has not been submitted with regard to the Veteran’s applications to reopen claims for service connection for a skeletal condition, a bilateral leg disability, or a lumbar spine disability. Under these circumstances, VA is not required to provide examinations in connection with these claims.
REASONS FOR REMAND
A review of the claims file reveals that a remand is necessary before a decision on the merits of the remaining claims can be reached. 
Left Shoulder Disability
The Veteran was afforded a VA examination of his left shoulder in April 2014. At that time, the Veteran reported flare-ups which resulted in pain, weakness, and fatigue. The examiner acknowledged that while it was feasible that the Veteran experienced pain, weakness, and fatigue of the left shoulder during flare-ups or when repeatedly used over time, he was unable to state any degree of additional loss of range of motion without resort to speculation. However, the examiner did not request that the Veteran describe and/or demonstrate the extent of motion loss during flares or with repetitive use. 
In order to comply with Sharp v. Shulkin, 29 Vet. App. 26 (2017), the Veteran should be afforded a VA examination in order to address whether pain, weakness, fatigue and/or incoordination significantly limits functional ability during flares or with repetitive use, and if so, provide an estimated range of motion during flares or with repetitive use. 
Right Shoulder, Neck, Arms and Hands
A review of the STRs reflects that the Veteran was a pedestrian struck by a motor vehicle and sustained an injury to his left shoulder and multiple contusions. The record did not specify where on the Veteran’s body he sustained the contusions. 
Post-service treatment reports reflect that the Veteran had complaints of limited extension of the right shoulder, a diagnosis of spondylosis, stenosis, and degenerative changes of the cervical spine, a diagnosis of bilateral extremity strain, right carpal tunnel syndrome, and left elbow degenerative changes.
Associated with the claims file are statements from the Veteran which indicate that he believes that his claimed disabilities resulted from his accident in service. 
As such, in order to properly adjudicate the claims for disabilities of the right shoulder, the neck, the arms, and the hands, a VA examination and etiology opinions should be obtained. 
Acquired Psychiatric Disorder
The July 2015 report from Dr. Henderson-Galligan indicated that the Veteran’s has depression which is caused by his service-connected left shoulder disability as well as nonservice-connected disabilities. 
The Veteran has not been afforded a VA examination in order to assess his claim for an acquired psychiatric disorder. In order to determine the etiology of the claim for an acquired psychiatric disorder, the Veteran should be afforded a VA psychiatric examination. 
Headaches
Associated with the claims file is a medical report from H. Skaggs, M.D., dated in May 2016. The report reflects that the Veteran indicated that he had headaches since service. Dr. Skaggs opined both that it is at least as likely as not that the Veteran’s headaches started in service and that headaches are caused by his depressive disorder. 
As noted, the claim for an acquired psychiatric disorder is herein remanded for an etiology opinion. While Dr. Skaggs appears to have linked the headaches both to service and to the Veteran’s depressive disorder, there is no indication that the Dr. Skaggs reviewed any service treatment report or any post-service treatment reports in rendering this opinion. As such, the Veteran should be afforded a VA examination to determine the etiology of the claimed headaches. 
TDIU
The Board also notes that the Veteran was not provided appropriate notice with respect to the claim for a TDIU. The Veteran should be provided with notice and a VA Form 21-8940. Pursuant to Rice, no formal claim of TDIU is required. However, as the claim requires additional development, on remand, the AOJ should provide the Veteran with a VA Form 21-8940 if he wishes to submit it in support of his claim for TDIU.
Moreover, the Board observes that the development and readjudication of the Veteran’s appeal for the increased rating and service connection claims remanded herein may affect his combined rating during the appeal period under consideration for the TDIU appeal. As such, the increased rating and service connection issues being remanded are inextricably intertwined, and adjudication of the Veteran’s TDIU appeal must be deferred at this time. Harris v. Derwinski, 1 Vet. App. 180 (1991) (the prohibition against the adjudication of claims that are inextricably intertwined is based upon the recognition that claims related to each other should not be subject to piecemeal decision-making or appellate litigation).
The matter is REMANDED for the following action:
1. Send the Veteran a TDIU claim form (VA Form 21-8940) and a duty-to-assist letter notifying him how to substantiate a TDIU claim pursuant to 38 C.F.R. § 3.159.
2. Schedule the Veteran for the appropriate VA examination to determine the current nature and severity of the service-connected left shoulder disability and in connection with the claim for a TDIU, the functional impairment resulting from this disability. 
The examiner should perform all necessary procedures, to include an interview with and physical examination of the Veteran. Any medically indicated tests should be accomplished, and reported. 
To the extent possible, range of motion testing should be accomplished and reported in active motion, passive motion, weight-bearing, and nonweight-bearing. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so.
The examiner is asked to describe whether pain, weakness, fatigue and/or incoordination significantly limits functional ability during flares or repetitive use, and if so, the examiner must estimate range of motion during flares or repetitive use. If the examination does not take place during a flare or repetitive testing cannot be performed, the examiner should have the Veteran describe and/or demonstrate the extent of motion loss during flares or repetitive use and provide the extent of motion loss described in terms of degrees. If there is no pain and/or no limitation of function, such facts must be noted in the report. The examiner should comment as to whether there is any medical reason to accept or reject the Veteran’s description of reduced range of motion during flares or repetitive use.
The examiner must review the complete claims file and indicate in the examination report that this was accomplished. All opinions must be supported by a complete rationale. 
If the examiner cannot provide any requested opinion without resorting to mere speculation, such should be stated along with a complete explanation for that conclusion. 
3. Schedule the Veteran for an appropriate examination to determine the etiology of the claimed disabilities of his right shoulder, neck, hands, and arms. The claims file must be made available to and be reviewed by the examiner. Any indicated tests and studies, including x-rays, must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. The examiner should provide the following opinions:
Is it at least as likely as not (50 percent probability or more) that any current or recent disability of the right shoulder, neck, hands, and arms: 
(a) had its onset during active service; or, 
(b) is otherwise related to any in-service disease, event, or injury, to include the Veteran’s accident in service. 
The examiner is advised that the Veteran is competent to report his symptoms and history, and such reports must be acknowledged and considered in formulating any opinion. 
A complete rationale for all opinions expressed must be provided. If any opinion cannot be provided without resorting to speculation or remote possibility, the examiner should indicate why that is so.
4. Schedule the Veteran for a VA psychiatric examination. The claims file must be made available to, and reviewed by, the examiner. All appropriate testing should be conducted. The examiner should perform a thorough examination of the Veteran’s psychiatric symptoms and determine the following: 
(a) Whether it is at least as likely as not (50 percent or greater probability) that any psychiatric disorder to include depression was caused by the pain associated with his service-connected left shoulder disability. 
(b) Whether it is at least as likely as not (50 percent or greater probability) that any psychiatric disorder to include depression was aggravated by the pain associated with his service-connected left shoulder disability. 
(c) Whether it is at least as likely as not (50 percent or greater probability) that any psychiatric disorder to include depression had its onset during active service or is otherwise related to active service. 
A complete rationale should be included with the opinions. If any opinion cannot be provided without resorting to speculation or remote possibility, the examiner should indicate why that is so.
5. Schedule the Veteran for an examination to determine the etiology of the claimed headache disorder. The claims file must be made available to, and reviewed by, the examiner. The examiner should obtain a detailed history of the Veteran’s headache symptomatology and perform an examination determine the following: 
(a) Whether it is at least as likely as not (50 percent or greater probability) that the Veteran’s claimed headache disorder had its clinical onset during active service or is otherwise related to active service. In providing this opinion, the examiner should acknowledge the Veteran’s statement to Dr. Skaggs concerning a continuity of symptomatology of headaches since service. 
The examiner should also provide the following opinions:
(b) Whether it is at least as likely as not (50 percent or greater probability) that any headache disorder was caused by an acquired psychiatric disorder. 
(c) Whether it is at least as likely as not (50 percent or greater probability) that any headache disorder was aggravated by an acquired psychiatric disorder. 
6. Inform the Veteran that he must report for any scheduled examinations and cooperate in the development of the claims. Failure to report for a VA examination without good cause may result in denial of the claims. 38 C.F.R. §§ 3.158, 3.655 (2017).
7. Then, readjudicate the Veteran’s claims including the claim for a TDIU. If the benefits sought on appeal remain denied, the Veteran should be furnished an appropriate supplemental statement of the case and be provided an opportunity to respond. The case should be returned to the Board for further appellate consideration, as appropriate.

 
KELLI A. KORDICH
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD A. Cryan, Counsel